Lawrence L. Kaplan v. Commissioner. Harold L. Kaplan v. Commissioner. The Estate of Bernard Kaplan, Deceased, Harold L. Kaplan, Administrator v. Commissioner.
Kaplan v. Commissioner
Docket Nos. 9652, 9653, 9654.
United States Tax Court
1947 Tax Ct. Memo LEXIS 63; 6 T.C.M. (CCH) 1100; T.C.M. (RIA) 47276; October 9, 1947
*63 For several years prior to 1941 the two individual petitioners and their father (now deceased) were engaged in the furniture business in partnership. As of the beginning of 1941, the three of them purported to take in a fourth partner, who was the mother of the individual petitioners and wife of the decedent. She contributed no additional capital originating with her, rendered no vital services, and took no substantial part in the management or control of the business. Held, she may not be recognized as their partner for income tax purposes in the taxable years 1941, 1942, and 1943. Milton Fischer, Esq., for the petitioners. A. J. Friedman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These consolidated proceedings involve the following tax deficiencies: Name of Petitioner
Year
Kind of Tax
Deficiency
Lawrence Kaplan
1941
Income
$ 4,848.49
1943
Income and victory
12,584.09
Harold Kaplan
1941
Income
4,803.36
1943
Income and victory
12,485.04
Est. of Bernard Kaplan, Deceased,
Harold L. Kaplan, Administrator
1941
Income
4,800.68
1943
Income and victory
12,657.82
Certain of the *64 adjustments made by the Commissioner are not contested. The sole question common to the three cases is whether Lillian Kaplan, the mother of petitioners Lawrence and Harold Kaplan and the wife of Bernard Kaplan, now deceased, should be recognized as their partner in the taxable years for Federal income tax purposes. Findings of Fact Petitioners Lawrence and Harold Kaplan and the decedent, Bernard Kaplan, in the taxable years were residents of Detroit, Michigan. Their returns were filed with the collector of internal revenue for the district of Michigan. Bernard Kaplan died July 2, 1945. Lillian Kaplan is the widow of Bernard and the mother of Lawrence and Harold. Lillian and Bernard were married in 1908. Shortly after the marriage Bernard went into the grocery business. The Kaplan family lived at the rear of the grocery store, and Lillian Kaplan often helped out with the work in the store. After about eight years the grocery business was sold, and some of the profits were invested in real estate located at Hancock and Brush in Detroit. Shortly thereafter, in 1917, Bernard Kaplan went into the automobile supplies and accessory business. This business was not successful, and *65 by 1919 Bernard had lost all his accumulated funds. In order to prevent creditors from seizing the real estate at Hancock and Brush, title thereto was conveyed to Lillian Kaplan. In 1921, a $5,000 mortgage was put upon the property at Hancock and Brush, and with the proceeds of the mortgage loan Bernard went into the furniture business with his brother-in-law and a nephew. In 1927, he sold his third interest in that business and in 1929 bought a half interest in a second furniture business. This business prospered for a time, and with his share of the profits Bernard paid off the mortgage on the Hancock and Brush property. Title to that property was thereupon transferred to the joint names of Bernard and Lillian Kaplan. In 1932, the second furniture business went into bankruptcy, and Bernard lost his investment therein. In the meantime, about $700 had been accumulated from rentals on the Hancock and Brush property. Lillian Kaplan obtained an additional $200 from one of her brothers. Lawrence and Harold Kaplan, the sons of Bernard and Lillian, had each saved about $400 or $500. With these combined funds another furniture business was opened in 1933 under the assumed name of State *66 Sample Furniture Company, with Lawrence Kaplan registered as the sole owner. The business consisted of the selling of furniture on the retail installment plan. Lawrence, who had been practicing law for a short time, gave up his practice in order to devote his time to the furniture business. Harold, who was then 18 years old and attending college, transferred from day to night school in order to devote his time to the business during the day. Both boys then lived at home with their parents. For about the first three years Lillian Kaplan worked in the store regularly, dusting the furniture in the morning and waiting on customers when Bernard and the boys were busy. In May, 1935, the State Sample Furniture Company business was incorporated under the laws of Michigan. One-third of the stock was issued to Lawrence and two-thirds to Bernard, who held one-third in trust for Harold, then still a minor. At the end of 1936 the corporation was dissolved; and its assets distributed on liquidation represented the capital of a partnership consisting of Bernard, Lawrence, and Harold Kaplan, who thereafter conducted the business in the same name, State Sample Furniture Company. At or about that *67 time the business was moved to a new location and Lillian Kaplan thereafter ceased to work regularly in the store. In the period from 1936 to 1940, Lawrence and Harold were married and moved away from their parents' home. The partnership returns of the State Sample Furniture Company for the years 1937, 1938, 1939, and 1940 showed net income in the respective amounts of about $57,000, $26,000, $32,000, and $55,000, divided one-third each to Bernard, Lawrence, and Harold Kaplan. None of the books or records of the company showed that Lillian had any interest in the business. On December 20, 1940, a written partnership agreement was entered into between Bernard, Lillian, Lawrence, and Harold Kaplan, providing that on and after January 1, 1941, they should do business in partnership under the firm name of State Sample Furniture Company; that the capital of the partnership should consist of the assets of the former partnership between Bernard, Harold, and Lawrence; that each of the four parties to the agreement should have a 25 per cent interest in the net assets of the business; that Bernard, Harold, and Lawrence should actively manage the business and for their services receive *68 $7,800 each per year, to be deducted as an expense of the business before the division of profits; that the net remaining profits or losses should be divided equally among the four parties; that Bernard, Harold, or Lawrence should sign all checks on the partnership bank account; and that the term of the partnership should be for 10 years unless earlier terminated by mutual agreement or the death of a partner. It was agreed at the time the instrument was executed that when the books of the business were audited after the close of the year and the business net worth determined, Lillian should give her notes to Lawrence and Harold in whatever amounts might be necessary to equalize the capital investments of the four parties. Shortly thereafter Bernard and Lillian went to Florida for the winter. An accountant was employed to examine the books of the business in January or February 1941. He determined that to equalize the capital investments it would be necessary for Lillian to receive the equivalent of $21,953.91 from Bernard, $15,845.76 from Harold, and $14,536.47 from Lawrence. Separate capital accounts were set up on the books for Bernard, Lillian, Lawrence, and Harold, to each of *69 which was credited 25 per cent ($52,336.14) of the business net worth as of the beginning of 1941. Separate drawing accounts were likewise set up on the books for each of the four. On March 20, 1941, after her return from Florida, Lillian Kaplan executed an delivered to Harold and Lawrence her noninterest-bearing demand promissory notes in the respective amounts determined by the accountant to be due them. No payments have since been made on either of these notes. Bernard Kaplan filed a gift tax return reporting the gift of a part of his interest to Lillian; but because of the exclusion and specific exemption claimed, no tax was shown to be due. The partnership returns filed by the State Sample Furniture Company for the years 1941, 1942, and 1943 disclosed net income in the respective amounts of $100,686.34, $123,538.84, and $181,687.82. These amounts included salaries of $7,800 each to Bernard, Lawrence, and Harold. The remaining net profits after salaries were shown as distributable equally to Bernard, Lawrence, Harold, and Lillian. Lillian Kaplan had never filed an income tax return prior to 1941, but in the taxable years she filed individual returns reporting the income shown *70 in the partnership returns as her distributive shares. No withdrawals were charged to Lillian's account on the partnership books during 1941. In 1942, $6,316.81 was charged to her account, of which $5,239.95 was used to pay income tax on the 1941 share of partnership income shown in the partnership return for that year as distributable to her. The remainder of $1,076.86 was for personal and incidental expenses, doctor bills, charities, and the like. In 1943, withdrawals of $53,189.32 were charged to her account. Of that amount, $20,516.46 was used to pay income taxes. Of the remainder, Lillian used about $32,000 to join with her husband, Bernard, who put up a like amount, in creating trusts for the benefit of their daughters-in-law and grandchildren. Other than bookkeeping entries, little if any change was made in the conduct or operation of the business after the execution of the partnership agreement of December 20, 1940, nor was any new or additional capital added to the business. Under the agreement, Lillian Kaplan was to have no part in the active management. In the taxable years she was in the store once or twice a week and often made inquiry of the bookkeeper as to how *71 business was. She rendered no vital personal services and did not substantially contribute to the control and management of the business. Lillian Kaplan, in the taxable years, was not engaged in carrying on business in partnership with her husband and two sons within the meaning of the Federal revenue laws. Opinion ARUNDELL, Judge: The respondent has refused to recognize Lillian Kaplan as a partner and has held that the shares of partnership income reported by her for 1941, 1942, and 1943 are taxable to Bernard, Lawrence, and Harold. The petitioners appear to contend, on the one hand, that Lillian has always been a partner since the inception of the business in 1933 and, on the other hand, that at least since January 1, 1941, she has been a partner. They have produced evidence of the family history since Bernard and Lillian were married in 1908, showing the various businesses in which Bernard was thereafter engaged, and that in the early days Lillian helped out in the grocery store. They have also attempted to demonstrate a capital contribution by Lillian in 1933 to the extent of some $700 or $900. But, it appears that the bulk of this money had been accumulated from rentals *72 derived from the property at Hancock and Brush, and under the circumstances disclosed by the record we think it can hardly be contended that this money was Lillian's rather than Bernard's. In any event, we are convinced that it was never treated as giving Lillian any proprietary interest in the business. In none of the books and records of the State Sample Furniture Company and in none of its tax returns was there ever any indication that Lillian had an interest in the business from 1933 to 1940. Furthermore, the forms through which the petitioners went in drawing up the partnership agreement in December 1940 are hardly consistent with their contention that Lillian had always been a partner. They at least adopted the forms of a sale by Lawrence and Harold to Lillian of a portion of their interests and a gift by Bernard to her of a portion of his interest. The record shows, however, that no payments have ever been made on the notes which Lillian gave to Lawrence and Harold. In explanation of the reasons for drafting and executing the formal partnership agreement in 1940, the petitioners testified to certain family dissension and some friction between Lillian and her daughters-in-law, *73 by reason whereof they contend that Lillian insisted upon having a written agreement recognizing her as a partner in the business. On the other hand, we find her in 1943 joining with her husband in the creation of substantial trusts for the benefit of her daughters-in-law and grandchildren. Be that as it may and whatever the motive which prompted the drafting of the written agreement in 1940, the mere execution of the agreement, of course, is not dispositive of the question to whom the business income should be taxed. As to services, it does appear that from about 1933 to 1935 Lillian kept regular hours at the store and performed some minor services of a more or less routine nature. Petitioners make no pretense that she worked regularly after 1935 or 1936. In the taxable years it appears that she went to the store once or twice a week and took a rather casual interest in the business. She had no authority to sign checks on the business bank account. Certainly there is no support in the record for a finding that she rendered any vital personal services. The execution of the partnership agreement in December 1940 in fact worked no change in the conduct or operation of the business. *74 No new or additional capital was made available to the business. The agreement itself did not contemplate that Lillian should have any part in the active management, and she made no substantial contribution to the management or control of the business. From the foregoing, we conclude that Lilliam Kaplan fails to meet the tests of , and , and we therefore hold that the respondent did not err in refusing to recognize her as a partner in the taxable years. Decisions will be entered for the respondent.